UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| LORETTA GARNER,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES; PUBLIC HEALTH SERVICE; INDIAN HEALTH SERVICE, an agency of The United States Government and THE UNITED STATES OF AMERICA,<br><br>　　　　　　Defendants. | CIV. 21-5037-JLV<br><br>ORDER |

**INTRODUCTION**

Plaintiff Loretta Garner filed a complaint against the defendants pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* (Docket 1). Defendants filed a motion together with a legal memorandum seeking dismissal of plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1). (Dockets 7 & 8). Plaintiff filed a brief in opposition to defendants' motion. (Docket 9). Defendants filed a reply brief together with two declarations and one exhibit. (Dockets 10, 11, 12 & 12-1). For the reasons stated below, defendants' motion is denied.

**ANALYSIS**

This action is filed pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et. seq.* ("FTCA"). (Docket 1 ¶ 3). Section 1346(b)(1) of Title 28 confers exclusive jurisdiction to the district courts over "civil actions on claims against

the United States, for money damages . . . for injury or loss of property, or personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

"The United States is, nevertheless, immune if an exception applies." Hart v. United States, 630 F.3d 1085, 1088 (8th Cir. 2011). "Where the United States has not waived sovereign immunity under the FTCA, the district court lacks subject matter jurisdiction to hear the case." Id.

RULE 12(b)(1) MOTION

Rule 12 provides in part that "a party may assert the following defenses by motion: . . . lack of subject-matter jurisdiction . . . ." Fed. R. Civ. P. 12(b)(1). While considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court must "accept all factual allegations in the pleadings as true and view them in the light most favorable to the nonmoving party." Great Rivers Habitat Alliance v. Fed. Emergency Mgmt. Agency, 615 F.3d 985, 988 (8th Cir. 2010). The court "has authority to consider matters outside the pleadings when subject matter jurisdiction is challenged under Rule 12(b)(1). . . . This does not . . . convert the 12(b)(1) motion to one for summary judgment." Harris v. P.A.M. Transportation, Inc., 339 F.3d 635, 638 (8th Cir. 2003).

"In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (internal citation omitted). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion [to dismiss] is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." Id. (internal citation omitted). "In a factual attack, the court considers matters outside the pleadings . . . and the non-moving party does not have the benefit of 12(b)(6) safeguards." Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (internal citations omitted).

FACTUAL ALLEGATIONS

Plaintiff bears the burden of proof on the issue of subject matter jurisdiction. Id. at 730. The facts alleged in the complaint which the court initially accepts as true for purposes of defendants' Rule 12(b)(1) motion are as follows.

On December 17, 2017, Ms. Garner was involved in an automobile accident and was transported by ambulance to the Rosebud Indian Health Service ("IHS") hospital. (Docket 1 ¶ 4). Ms. Garner, wearing only a hospital gown and underwear, was taken by gurney by Scott Wilson, an IHS employee and radiology technician, for an x-ray. Id. ¶¶ 5 & 6; see also Docket 8 at p. 2. No female chaperone or supervisor accompanied Ms. Garner and Mr. Wilson to the x-ray room. (Docket 1 ¶ 7). Following the x-ray, Mr. Wilson moved Ms.

3

Garner back to the gurney.  Id.  In that process, Ms. Garner's gown bunched up, revealing her underwear.  Id. ¶ 9.  Mr. Wilson offered to assist her in readjusting her gown.  Id.

When Mr. Wilson saw Ms. Garner was wearing thong underwear he commented "I see you like to dress up fancy."  Id. ¶ 10.  He then put his hand between her legs, under her underwear and digitally penetrated her with his gloved hand.  Id.  As he pushed his fingers in and out of Ms. Garner's vagina she objected and told Mr. Wilson to stop.  Id. ¶¶ 12 & 13.  As she tried to get up and push him away, Mr. Wilson stated "I bet you didn't think this would be happening to you today."  Id. ¶¶ 14 & 15.  After removing his hand, Mr. Wilson said "Thank you."  Id. ¶ 15.  He then wheeled Ms. Garner back to the emergency room.  Id. ¶ 17.  Ms. Garner was too shocked and scared to say anything to anyone.  Id. ¶ 18.

Later, Mr. Wilson had to take Ms. Garner back to the x-ray room.  Id. ¶ 19.  On this trip, he mockingly asked her "should we have a replay?" but did not repeat his earlier conduct.  Id. ¶ 20.  Ms. Garner was too shocked, traumatized, frightened and scared by Mr. Wilson's words and conduct that she did not report his conduct at the time.  Id. ¶¶ 18 & 21.

In March 2018, Ms. Garner reported Mr. Wilson's conduct to her counselor.  Id. ¶ 22.  Later, a hospital administrator told Ms. Garner that hospital policy required a chaperone to accompany Wilson and Ms. Garner to the x-ray room.  Id. ¶ 23.  Ms. Garner later learned Mr. Wilson had been disciplined

4

for sexual harassment or misconduct with another individual while working at the IHS hospital in Rosebud.  Id. ¶ 24.

Plaintiff's complaint seeks damages under the FTCA for defendants' conduct, specifically, failing to adequately train and supervise Mr. Wilson.  Id. ¶ 30.  The complaint alleges the defendants were negligent:

> [I]n their duty to provide appropriate medical care for and ensure the safety of [Ms. Garner].  Id. ¶ 31;
>
> [I]n their duty to properly train their . . . employees to provide appropriate medical care for and ensure the safety of [Ms. Garner]. Id. ¶ 32; and
>
> [I]n taking proper precautions, including not permitting [Mr.] Wilson to be alone with [Ms. Garner], for the appropriate medical care and safety of [Ms. Garner].  Id. ¶ 33.

The complaint alleges defendants' negligence proximately cause damages to Ms. Garner.  Id. ¶ 34.

DEFENDANTS' MOTION

Defendants acknowledge the issues before the court must be resolved according to South Dakota law, where the alleged tort occurred.  (Docket 8 at p. 5) (referencing St. John v. United States, 240 F.3d 671, 676 (8th Cir. 2001); internal citation omitted).  FTCA claims, however, "are strictly limited to a scope of employment analysis, regardless of state law doctrines of respondeat superior and apparent authority."  Id. (citing Primeaux v. United States, 181 F.3d 876, 878 (8th Cir. 1999) (*en banc*)).  The government asserts, "even if state law extends a private employer's vicarious liability to employee conduct not within the scope of employment, . . . FTCA liability remains limited to employee conduct

5

within the scope of employment, as defined by state law." Id. (citing Primeaux, 181 F.3d at 878).

With this framework, defendants assert two grounds upon which their motion to dismiss pursuant to Rule 12(b)(1) should be granted. First, Mr. Wilson "was not acting within the scope of his employment" at the time "he committed the alleged battery" against Ms. Garner. (Docket 8 at p. 2). Second, Ms. Garner's "claims are not cognizable under the FTCA as the United States has not waived sovereign immunity for claims arising out of assault or battery." Id.

Defendants submit that in "applying South Dakota law to a scope of employment inquiry," the South Dakota Supreme Court "found that sexual abuse is outside the scope of employment[.]" Id. at p. 6 (referencing Bernie v. Catholic Diocese of Sioux Falls, 821 N.W.2d 232, 239-40 (S.D. 2012) (sexual abuse by a Catholic priest is not in furtherance of Diocesan business.). Similarly, in this case, defendants argue "Mr. Wilson's alleged conduct amounts to an act done to effect some independent purpose of is own . . . . wholly motivated by his personal interests and therefore outside the scope of his employment." Id. "Even assuming *arguendo* Plaintiff can establish that Mr. Wilson's alleged actions had a dual purpose," defendants contend " there is no 'nexus of foreseeability' between Mr. Wilson's employment and the alleged battery." Id. at p. 7.

Alternatively, the government argues "FTCA's waiver of sovereign immunity is subject to exceptions," particularly for an "intentional torts," of

6

"assault [or] battery[.]" Id. (citing 28 U.S.C. 2680(h)). That section "does not merely bar claims for assault or battery; in sweeping language it excludes any claim *arising out of assault and battery*." Id. (citing United States v. Shearer, 473 U.S. 52, 55 (1985) (emphasis in Shearer). For that reason, defendants argue "§ 2680(h) covers claims that 'sound in negligence but stem from a battery committed by a Government employee.' " Id. (citing Shearer, 473 U.S. at 55).

Defendants submit Ms. Garner's "negligent training and supervision claims undoubtedly arise solely from the Government's employment relationship with Mr. Wilson and are therefore barred by 28 U.S.C. § 2680(h)." Id. at p. 8 (referencing Billingsley v. United States, 251 F.3d 696, 698 (8th Cir. 2001)). Ms. Garner "has not alleged that Mr. Wilson sexually assaulted anyone prior to December 17, 2017; that the Government was aware of any such assault . . . before December 17, 2017; or that the Government otherwise had a duty to prevent the alleged battery outside of its employment relationship with Mr. Wilson." Id. "While Plaintiff alleges that IHS had a chaperone policy that it failed to follow," defendants argue Ms. Garner "failed to identify any such policy that was in existence on December 17, 2017." Id. at p. 9.

PLAINTIFF'S RESPONSE

Contrary to the government's Primeaux argument, Ms. Garner argues the assault occurred at the IHS hospital where Mr. Wilson worked, while he "was actually performing his duties at the time" of the assault, she "was dressed in a patient's gown provided by the hospital," he wheeled her "to the X-ray room in a

7

hospital wheelchair," and he "digitally penetrated [her] while helping her on and off of the table." (Docket 9 at pp. 2-3). Ms. Garner contends the hospital "was aware of other allegations against" Mr. Wilson and "had a workplace policy to prevent exactly the type of conduct that occurred." Id. at p. 3. While plaintiff acknowledges the Billingsley court found "that negligent supervision and hiring . . . could not be a basis of liability as it would be contrary to . . . . [§] 2680(h)," Ms. Garner argues "Billingsley did not include a violation of a workplace policy requiring a chaperone," a policy "created to protect a person in Ms. Garner's situation." Id. at p. 5. This policy coupled with the hospital's "independent antecedent duty" to protect its patients is sufficient in plaintiff's view "to distinguish [her] case from Billingsley and from the prohibitions of § 2680(h)." Id.

DEFENDANTS' REPLY

In reply, defendants submit two declarations together with a 2019 amendment to a portion of the Indian Health Services Manual ("IHM").[1] (Dockets 11, 12 & 12-1). In the first declaration, the Rosebud IHS Chief Quality Management Officer stated that Rosebud IHS "had no internal policies related specifically to Mr. Scott Wilson that required his patient interactions to be chaperoned." (Docket 11 ¶ 3). In the second declaration, the Directory of the

---

[1] The 2019 amendment to the IHM is irrelevant as it was generated 14 months after the alleged assault of Ms. Garner.

Division of Regulatory and Policy Coordination of IHS stated there were no "IHM policies in effect in 2017 related to the use of chaperones." (Docket 12 ¶ 5).

Defendants argue plaintiff's "bald[]" assertion the government "failed to abide by some unidentified policy" is not entitled to "presumptive truthfulness." (Docket 10 at p. 2) (citing Osborn, 918 F.2d at 730). Because Ms. Garner "failed to set forth affirmative evidence demonstrating . . . that the United States had a duty unrelated to the employment relationship," defendants assert she "failed to meet her burden of proving that this Court has jurisdiction over her claims." Id. Defendants argue Ms. Garner "conflates the foreseeability inquiry in the scope-of-employment context with a general foreseeability analysis." Id. at p. 4. According to the defendants, Ms. Garner "does not allege that a chaperone policy specific to Mr. Wilson existed on December 17, 2017, nor does [she] allege that Mr. Wilson was disciplined for similar conduct prior to the December 2017 incident." Id. at p. 4 n.1.

Because plaintiff "provided no affirmative evidence to support the assertion that [the government] had some independent, antecedent duty unrelated to the employment relationship to prevent Mr. Wilson from engaging in the alleged conduct," defendants argue Ms. Garner "cannot overcome the intentional tort exception to the FTCA's waiver of sovereign immunity." Id. at pp. 5-6.

9

For these reasons, defendants argue the court must dismiss plaintiff's complaint for a lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  Id. at p. 6.

This case involves a factual attack under a Rule 12(b)(1) motion, that is, a factual challenge to "the trial court's jurisdiction-its very power to hear the case[.]"  Osborn, 918 F.2d at 730.  In resolving a factual attack "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  Id.  See also Faibisch v. University of Minnesota, 304 F.3d 797, 801 (8th Cir. 2002) ("When a district court engages in a factual review, it inquires into and resolves factual disputes.").  "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist."  Osborn, 918 F.2d at 730.  Any finding of fact made by the district court is reviewed "under the 'clearly erroneous' standard."  Id. (internal citation omitted).

The government's reliance on Primeaux is misplaced.  In Primeaux, the offender was an out of his jurisdiction, off-duty, out of uniform tribal officer who stopped to assist a stranded driver.  Primeaux, 181 F.3d at 882.  As his victim "was stranded far from town late on a cold night," the court concluded the officer's assistance was "the kind of assistance any citizen might offer."  Id.  The fact that he then raped her "was committed while . . . on a frolic of his own and

10

not acting in the course or scope of his employment." Id. The court concluded "[t]he connection between [his] government employment and his sexual assault of Primeaux was simply too remote and tenuous to be foreseeable to his employer." Id. "[I]t was conduct 'so unusual or startling that it would be unfair to include the loss caused by the injury among the costs of the employer's business.' " Id. (citing Leafgreen v. American Family Mutual Insurance Co., 393 N.W.2d 275, 280-81 (S.D. 1986)).

Ms. Garner's case is more closely aligned with Red Elk v. United States, 62 F.3d 1102 (8th Cir. 1995), a case distinguished in Primeaux. In Red Elk, the offender was on-duty and raped a 13-year-old in the back seat of his police car. Primeaux, 181 F.3d at 881. While "this criminal conduct was done to benefit the officer personally, not his government employer," the Red Elk court "concluded it was foreseeable that on-duty police occasionally misuse their authority in this manner." Id. "Red Elk and recent cases from other jurisdictions have concluded it is sufficiently foreseeable to a government employer that on-duty police officers will occasionally misuse their authority to sexually assault detainees." Primeaux, 181 F.3d at 882. This makes the employee's conduct "foreseeable." Id. at 881.

Similarly, defendants' reliance on Billingsley misses the point. Billingsley did determine that finding "the government liable for negligent hiring and supervision of an employee who commits a tort would frustrate the purpose of § 2680(h), which . . . bar[s] suits resulting from 'deliberate attacks by

11

Government employees." Billingsley, 251 F.3d at 698. But the issue the court permitted to continue through discovery in Billingsley was whether the "Job Corps employee responsible for the enrollees knew that [the assailant] acted violently in public prior to his commission of the battery [of enrollee Billingsley]." Id. This duty to protect Billingsley from attack arose "out of an independent, antecedent duty unrelated to the employment relationship between the tortfeasor and the United States." Id. (citing Leleux v. United States, 178 F.3d 750, 747 (5th Cir. 1999). In other words, the government had an independent, pre-existing duty to protect the other Job Corps enrollees from harm.

It goes without serious challenge that the IHS hospital in Rosebud owed an independent, antecedent duty to provide medical care to Ms. Garner and to protect her from harm at the hospital. Defendants' briefing fails to acknowledge this hospital-patient duty. See Dockets 8 & 10. This duty is separate and apart from the hospital's relationship with Mr. Wilson.

The court finds the complaint adequately alleges an informal Rosebud hospital policy existed prior to December 2017 which required a chaperone to accompany Mr. Wilson and a hospital patient to the x-ray room. See Docket 1 ¶ 23 ("A hospital administrator later told [Ms. Garner] that hospital policy required a chaperone to accompany Wilson *and Plaintiff* to the X-ray room.") (emphasis added). This is not a general allegation suggesting that sometime *after* the assault of Ms. Garner the hospital imposed a policy requiring a


chaperone to accompany Mr. Wilson and a female patient.   This allegation is specific to the circumstances of Ms. Garner's assault.

The IHS's "disapproval of [Mr. Wilson's] misconduct does not preclude FTCA liability."   St. John, 240 F.3d at 676 (referencing Deuchar v. Foland Ranch, Inc., 410 N.W.2d 177, 180 (S.D. 1987)).   Defendants provided proof that no written policy existed at the Rosebud hospital prior to Mr. Wilson's assault of Ms. Garner.   (Docket 11 ¶ 3).   However, defendants did not address the issue of whether the hospital had an informal, unwritten rule regarding Mr. Wilson's need for supervision in the form of a chaperone or otherwise.   The complaint adequately alleges Mr. Wilson was disciplined in the past for sexual harassment or misconduct while at the Rosebud hospital.   (Docket 1 ¶ 24).

Read in context, the court accepts the factual allegations of the complaint as true.   Great Rivers Habitat Alliance, 615 F.3d at 988.   "At the very minimum, [Ms. Garner] is entitled to discovery regarding the nature of the government's alleged negligence and whether [Mr. Wilson] was acting within the scope of his employment at the time of the tort."   Billingsley, 251 F.3d at 698; see also St. John, 240 F.3d at 677-78 ("Without knowing whether [the offending, ex-husband officer] threatened St. John with arrest, it is impossible to determine whether he was acting within the scope of his employment. . . . Because the district court failed to complete the scope of employment analysis, we reverse in part and remand the case to the district court for further findings and proceedings consistent with this opinion.").

Whether defendants' Rule 12(b)(1) motion to dismiss is considered a facial or factual challenge to plaintiff's complaint, the court finds the complaint states a plausible FTCA claim.

## ORDER

Based on the above analysis, it is

ORDERED that defendants' motion to dismiss (Docket 7) is denied.

Dated January 11, 2022.

                        BY THE COURT:

                        /s/ *Jeffrey L. Viken*
                        JEFFREY L. VIKEN
                        UNITED STATES DISTRICT JUDGE